**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **YVONNE GARREAUX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 06-502C** |
| **v.** | ) | **(Chief Judge Damich)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

PETER D. KEISLER
Assistant attorney General

JEANNE E. DAVIDSON
Acting Director

FRANKLIN E. WHITE, JR.
Assistant Director

ROBERT E. CHANDLER
Trial attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel.: (202) 307-0282

Attorneys for Defendant

February 5, 2007

# TABLE OF CONTENTS


TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . 1

I. Ms. Garreaux Has Failed To Allege Sufficiently Her Contract Claims Against The Government . . . . . . . . . . 3

A. Ms. Garreaux Has Failed To Satisfy RCFC 9(h) . . . . . . . . . . 3

B. The Cases Holding That The Government Is Not Liable Upon Contracts By Local Housing Authorities Are Not Distinguishable From This Case . . . . . . . . . . 3

II. The Court Lacks Jurisdiction Because Ms. Garreaux Has Failed To Allege Facts That Constitute A Breach Of The Fort Laramie Treaty . . . . . . . . 6

A. Ms. Garreaux Has Not Alleged The Commission Of A "Wrong" Within The Meaning Of The Treaty . . . . . . . . . . 7

B Ms. Garreaux Has Failed To Allege That The Wrongs She Suffered Were Committed By "Bad Men". . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . 11

## TABLE OF AUTHORITIES

## CASES

Aetna Casualty & Surety Co., Inc., v. United States,
655 F.2d 1047 (1981)) ........ 5

Begay v. United States,
219 Ct. Cl. 599 (1979) ........ 9

Briscoe v. LaHue,
663 F.2d 713 (7th Cir.1981), aff'd, 460 U.S. 325, 103 S. Ct. 1108, 75 L. Ed.2d 96 (1983) ........ 10

Department of Revenue of Oregon v. ACF Industries, Inc.,
510 U.S. 332, 114 S. Ct. 843, 127 L. Ed.2d 165 (1994) ........ 8

DeRoche v. United States,
2 Cl. Ct. 809 (1983) ........ 4

Dewakuku v. Martinez,
226 F. Supp.2d 1199 (D. Ariz. 2002) ........ 5

Elk v. United States,
70 Fed. Cl. 405 (2006) ........ 9

Eubanks v. United States,
25 Cl. Ct. 131 (1992) ........ 4

Fortec Constructors v. United States,
760 F.2d 1288 (Fed. Cir. 1985) ........ 8

Haberman v. United States,
26 Fed. Cl. 1405 (1992) ........ 10

Hebah v. United States,
197 Ct. Cl. 729 (1972) ........ 9, 11

Housing Corporation of America v. United States,
468 F.2d 922 (Ct. Cl. 1972) ........ 4, 5, 6

Jarecki v. G.D. Searle & Co.,
367 U.S. 303, 81 S. Ct. 1579, 6 L. Ed.2d 859 (1961) ........ 8

Massachusetts v. Morash,
490 U.S. 107, 109 S. Ct. 1668, 104 L. Ed.2d 98 (1989) .......... 8

Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana,
472 U.S. 237, 105 S. Ct. 2587, 86 L. Ed.2d 168 (1985) .......... 8

New Era Construction v. United States,
890 F.2d 1152 (Fed. Cir. 1989) .......... 4, 5, 6

Pennsylvania Dept. of Public Welfare v. Davenport,
495 U.S. 552, 110 S. Ct. 2126, 109 L. Ed.2d 588 (1990) .......... 9

Tsosie v. United States,
825 F.2d 393 (Fed. Cir. 1987) .......... 8

## STATUTES

**United States Codes**

25 U.S.C. § 4101 et seq .......... 1, 3

42 U.S.C. § 1437bb .......... 1

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **YVONNE GARREAUX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 06-502C** |
| **v.** | ) | **(Chief Judge Damich)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply to plaintiff's response to Defendant's Motion to Dismiss. In our moving brief, we established that the Court lacked jurisdiction to consider Ms. Garreaux's claims because her complaint did not contain allegations sufficient to state a claim within this Court's jurisdiction. The Government is not liable in contract to Ms. Garreaux because it is not a party to any agreement with her and because it is not liable upon her agreement with the Cheyenne River Housing Authority ("CRHA"). Moreover, Ms. Garreaux failed to sufficiently plead her contract claim against the United States. We asserted also that Ms. Garreaux had failed to allege a regulatory, statutory or constitutional basis for Tucker Act jurisdiction. The Indian Housing Act, 42 U.S.C. § 1437bb, upon which Ms. Garreaux relied, did not create a private right of action and had been repealed in 1996. The statute which replaced it, the Native American Housing Assistance and Self-determination Act of 1996 ("NAHASA"), 25 U.S.C. § 4101 et seq. likewise does not provide for a private right of action. In addition, we established that the Court does not possess jurisdiction to consider Ms.

Garreaux's claims pursuant to the Fort Laramie Treaty of 1868. Finally, we established that the Court does not possess jurisdiction to consider any of Ms. Garreaux's tort claims pursuant to the Tucker Act.

In her response, Ms. Garreaux argues that the cases cited in our motion for the proposition that the Government is not vicariously liable for the breach of the Mutual Home Occupancy Agreement ("MHOA") by CRHA are distinguishable from this case. As we discuss below, however, the cases are not distinguishable in any meaningful way, and Ms. Garreaux's argument fails to address the pleading deficiencies cited in our motion. The most notable feature of this argument, though, is that it represents Ms. Garreaux's only attempt to assert Government liability outside the Fort Laramie Treaty of 1868 (the "Treaty"). That is, aside from her assertion that the Government is liable upon the MHOA because CRHA is the Government's agent, Ms. Garreaux does not assert any basis to hold the Government directly liable in contract or tort or pursuant to NAHASA or any other legislation. She argues only that any such contract breach or tortious conduct by CRHA, HUD or BIA agents would constitute a "wrong" committed by "bad men among ... people subject to the authority of the United States" within the meaning of the Treaty. As we discuss below, however, Ms. Garreaux has not alleged facts sufficient to state a claim pursuant to the Treaty and, thus, has not demonstrated this Court's jurisdiction to consider her claims. For these reasons, we respectfully request that the Court dismiss Ms. Garreaux's complaint.

## I. **Ms. Garreaux Has Failed To Allege Sufficiently Her Contract Claims Against The Government**

### A. **Ms. Garreaux Has Failed To Satisfy RCFC 9(h)**

In our motion we argued that Ms. Garreaux has not satisfied the heightened pleading standards set out in RCFC 9(h) for alleging a breach of contract by the United States. Ms. Garreaux has not pled "the substance of those portions of the contract ... on which [she] relies" or annexed to the complaint "a copy of the contract or treaty, indicating the provisions thereof on which the plaintiff relies." Id. Ms. Garreaux alleges that CRHA breached the MHOA, but she has not indicated, by allegation or annexation, the language of any contract provision upon which she relies in making this allegation. She has entirely failed to point the language of any contract that gives rise to the obligations she claims HUD owed her.

Ms. Garreaux responds to this argument only by stating, in a footnote, "The defendant argues that the plaintiff has failed to provide the contract (MHOA agreement). The plaintiff's complaint, however, specifically sets out the fact that the local housing authority has lost the original MHOA agreement." Pl. Br. at 12, fn 7. Presumably, Ms. Garreaux has not retained a copy of the agreement either. Ms. Garreaux's failure to retain or procure a copy of her contract with CRHA, however, does not excuse her failure to meet RCFC 9(h)'s pleading requirements, and Ms. Garreaux does not argue as much. Moreover, it is not clear how Ms. Garreaux expects to maintain a cause of action for breach of contract if she is not able to allege the substance of her agreement. Ms. Garreaux's claims for breach of contract therefore must be dismissed.

### B. **The Cases Holding That The Government Is Not Liable Upon Contracts By Local Housing Authorities Are Not Distinguishable From This Case**

In our motion, we argued that this Court and its predecessor have held that HUD is not

liable upon contracts entered into by local housing authorities, notwithstanding the fact that HUD exercises some degree of control over projects carried out by such housing authorities. New Era Construction v. United States, 890 F.2d 1152, 1155 (Fed. Cir. 1989); Eubanks v. United States, 25 Cl. Ct. 131 (1992); DeRoche v. United States, 2 Cl. Ct. 809 (1983); Housing Corporation of America v. United States, 468 F.2d 922 (Ct. Cl. 1972). Ms. Garreaux has responded by arguing that those cases are distinguishable from this one because: (i) they did not deal with MHOA contracts with private, individual Indian people; (ii) HUD exercised "substantial control" over CRHA; (iii) HUD had a greater level of involvement in the project in this case and (iv) HUD was "part of" and approved Ms. Garreaux's lease agreement with CRHA.[1] Pl. Br. At 13.

These supposed distinctions have no bearing upon the issue raised by the Government. It is clear from the cases that HUD's relationship with local housing authorities "does not create an express or implied contract between [parties contracting with the housing authority] and the [Government] nor does it make the [housing authority] the [government]'s agent through HUD." New Era Construction, 890 F.2d at 1155 (quoting Housing Corporation of America, 468 F.2d at 924). In the administration of its housing programs, the Government acts, through HUD, in its capacity as regulator and sovereign. DeRoche, 2 Cl. Ct. at 812. In response to the first distinction claimed by Ms. Garreaux, there is no logical reason why a housing authority should become the Government's agent simply because the housing authority contracts with an individual, as opposed to a contractor; indeed, Ms. Garreaux offers no explanation for why that should be the case. Moreover, the claims in both Eubanks and DeRoche were brought by

[1] Ms. Garreaux also alleged that her reliance upon Article I of the Treaty distinguishes this case. This raises a distinct issue pursuant to the treaty, however, and does not support Ms.

individuals, but in each case the Court found that that Government was not liable upon the contract. Thus, Ms. Garreaux's first argument cited above should be rejected.

Ms. Garreaux's second and third arguments likewise should be rejected. Her allegation that HUD exercised "substantial control" over CRHA and the Mutual Home Help Program does not distinguish this case from any of the cases upon which we rely. New Era Construction v. United States, 890 F.2d at 1153-54 (HUD provided funds, approved the contract and had the right to declare default pursuant to the contract); Eubanks, 25 Cl. Ct. at 138 (court acknowledged "HUD's statutory, regulatory and contractual control over the use of funds provided for the program" to the housing authority); DeRoche, 2 Cl. Ct. at 811 (alleging that HUD had "dominant control" over the local housing authority and "exercised extensive control over [its] day-to-day operations," and providing a "litany of alleged actions" in support); Housing Corporation of America, 468 F.2d at 923-25 (HUD approved the contract, drawings and specifications and was alleged to have requested changes to the contract work). As these cases make clear, the fact of control over a local housing authority is not relevant, regardless of the degree of control alleged by plaintiff. "Whereas in certain business relationships between private parties, intimate involvement in the contract might sometimes result in the conclusion that a contract is implied in fact, such is not the case against the United States, acting as sovereign, when, as here, it is precisely the 'sovereign nature of the acts [which] insulates the United States from liability.' DeRoche, 25 Cl. Ct. at 137 (quoting Aetna Casualty & Surety Co., Inc., 655 F.2d 1047, 1052

---

Garreaux's argument that CRHA was the Government's agent for the purpose of entering the MHOA. Ms. Garreaux's treaty arguments are addressed in Section II, below.

(1981)).[2]

Finally, Ms. Garreaux's allegation that HUD was "part of" and approved the lease agreement between her and CRHA does not distinguish this case from those we cited and, in any event, does not provide a basis upon which to find the Government liable in contract. HUD's approval of the MHOA itself would not have been sufficient to create Government liability upon the MHOA, New Era Construction v. United States, 890 F.2d at 1153-54; Housing Corporation of America, 468 F.2d at 923-25, and it is unclear why Ms. Garreaux believes HUD's alleged approval of her lease should create Government liability upon the MHOA. At best, this argument is a derivative of her argument that the Government should be liable upon CRHA's contracts because of the degree of control HUD exercised over CRHA and the involvement it had in CRHA's programs, and should be rejected for the reasons stated in the preceding paragraph.

## II. The Court Lacks Jurisdiction Because Ms. Garreaux Has Failed To Allege Facts That Constitute A Breach Of The Fort Laramie Treaty

Ms. Garreaux has argued in her response that she has pled sufficiently the required elements for an action pursuant to the Treaty. Pl. Br. 8-11. For the reasons stated below, however, Ms. Garreaux's allegations do not state a claim pursuant to the Treaty. Because she claims that the Treaty violation provides a basis for jurisdiction pursuant to the Tucker Act, her failure to state a treaty claim deprives this Court of jurisdiction to consider her claims. Her

[2] Ms. Garreaux also quotes Dewakuku v. Martinez, 226 F.Supp.2d 1199 (D. Ariz. 2002) apparently as evidence that HUD exercises control over local housing authorities; she does not argue that the Dewakuku, which is a case pursuant to the Administrative Procedures Act, is otherwise applicable to the issues in this case. These quotations are not evidence, of course, and, ultimately, the question of whether and to what extent HUD exercised control over CRHA is not relevant to this case for the reasons described above.

complaint, therefore, must be dismissed.

Article I of the Treaty reads, in relevant part:

> If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also reimburse the injured person for the loss sustained.

Ms. Garreaux has not alleged facts that, if proved, would constitute a "wrong" pursuant to the Treaty. Moreover, she has not alleged that any such wrongs were perpetrated by "bad men." She has failed adequately to allege a violation of the Treaty, and therefore has failed to properly invoke the jurisdiction of this Court.

### A. <u>Ms. Garreaux Has Not Alleged The Commission Of A "Wrong" Within The Meaning Of The Treaty</u>

The allegations in Ms. Garreaux's complaint do not sufficiently state "wrongs" as defined by the Treaty. In her response, the only wrongs Ms. Garreaux alleges to have suffered are that (i) through the tortious conduct of HUD and BIA, she cannot have the home which she has purchased and (ii) CRHA breached the MHOA which has caused her not to have the house she bargained for. In order to state a claim pursuant to the Treaty, however, a plaintiff must allege that she was the victim of a crime. At the very least, the plaintiff must allege that the perpetrator of the alleged wrong engaged in some affirmative act. Ms. Garreaux has failed to allege facts support these requirements and, indeed, has alleged few facts to support her claims at all.

The Treaty does not define the term "wrong". It is evident from the term's context in Article I, and from the cases, that, in order for an action to be a wrong pursuant to the Treaty, it must be a criminal act. It is a basic cannon of construction that a term should be understood in

the context of the words surrounding it. Massachusetts v. Morash, 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989); Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961) ("The maxim noscitur a sociis, ... while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress"). In this case, the Treaty requires that anyone who commits a "wrong" be "arrested and punished." Thus, it is clear from the context that the term "wrong" refers to criminal acts because the Government could not have undertaken an obligation to arrest and punish persons who had not committed criminal acts. Moreover, statutes and contracts should be interpreted so as not to render one part inoperative or meaningless. Department of Revenue of Oregon v. ACF Industries, Inc., 510 U.S. 332, 114 S.Ct. 843, 848, 127 L.Ed.2d 165 (1994); Pennsylvania Dept. of Public Welfare v. Davenport, 495 U.S. 552, 562, 110 S.Ct. 2126, 2132, 109 L.Ed.2d 588 (1990); Mountain States Telephone & Telegraph Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985). If the Court were to interpret "wrong" to include non-criminal acts, it would render the arrest and punish language inoperative because the United States could not arrest and punish persons within its control for acts that are not crimes. [3]

In addition, this interpretation of the term "wrong" is borne out by the cases Ms.

---

[3] It would be inappropriate to apply the Indian canon of Construction to this case as Ms. Garreaux suggests. Pl. Br. at 8. The Treaty contains a provision that imposes upon the Native American signatories obligations that mirror those undertaken by the United States in the passage that has been cited in this case. Thus, it would not be possible to interpret the bad man provision at issue in this case liberally for the benefit of the Indian signatories because any additional benefits conferred by such a construction would require the imposition of corresponding burdens.

Garreaux cites in her response. In each case, the claim pursuant to the "bad men" provision is predicated upon some act that is a crime. Tsosie v. United States, 825 F.2d 393 (Fed. Cir. 1987) (sexual assault by hospital employee); Begay v. United States, 219 Ct. Cl. 599 (1979) (sexual assault of students by school counselor and other staff); Hebah v. United States, 197 Ct. Cl. 729 (1972) ("Hebah II") ("killing of an Indian without just cause or reason"); Elk v. United States, 70 Fed. Cl. 405 (2006) (sexual assault by Army recruiter). Indeed, the Government is not aware of any case in which the asserted "wrong" pursuant to a "bad man" provision was not based upon allegations of criminal conduct.

Even ignoring these contextual cues to the Treaty's meaning, pursuant to the common or plain meaning of the phrase "commit any wrong" Ms. Garreaux has failed to set forth allegations sufficient to support her claims. As its primary means of interpretation, the court in Hebah II considered the meaning a Native American signing the treaty would ascribe to its terms. Admittedly, it is difficult to know precisely what the Native American signatories had in mind when they executed the Treaty almost 140 years ago, but it is doubtful that they contemplated the term "wrong" would encompass the negligent denial by a third party local housing authority of promised benefits pursuant to a Federally funded housing assistance program or the negligent administration of such a program, as Ms. Garreaux contends in this case.

At the very least, the plain meaning of the "commi[ssion]" of a "wrong" pursuant to the Treaty must consist of an affirmative act by the perpetrator. In considering the plain meaning of the bad man provisions, the Court in Hebah II also looked at their dictionary meaning. The term "commit" means "to carry into action deliberately." WEBSTER'S COLLEGIATE DICTIONARY 250 (2003). The term "wrong" means "an injurious, unfair or unjust act." Id. at

1447 (emphasis added). Based upon the common and plain meaning of these terms, then, one cannot "commit" a "wrong" through inaction. Ms. Garreaux has not alleged any affirmative act by BIA, HUD or CRHA and therefore has failed to allege a "wrong" within the meaning of the Treaty.

Even if the Court holds that an allegation of a crime or affirmative act is not required to demonstrate a wrong pursuant to the Treaty, Ms. Garreaux's allegations still are insufficient. She has failed entirely to plead facts relating to any acts or failures to act by HUD, BIA or CRHA. Her response states only that HUD and BIA engaged in "tortious conduct." Pl. Br. at 10. Her complaint is similarly vague and conclusory in that she alleges only: that HUD "failed to properly administer the Mutual Help Homeownership Program," "failed to assure" that her home was transferable, "failed to have proper oversight over the Housing Authority," "failed to provide oversight of the maintenance and construction" of her house; that BIA's "action/inaction in administering the underlying lease" and BIA's "negligence in administering the lease" caused her to lose her house. Compl. at 8-9. She does not allege any fact or set of facts that constitutes a failure to act or negligent act. She alleges that CRHA breach the MHOA, but has not alleged any fact constituting breach or the substance of any provision of the MHOA that has been breached. These kinds of "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Haberman v. United States, 26 Fed. Cl. 1405, 1410-11 (1992), (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir.1981), aff'd, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)). Moreover, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A Moore's Federal Practice, ¶ 12.07 [2.-5] (2d ed. 1992). Ms. Garreaux's complaint therefore must be dismissed.

### B. Ms. Garreaux Has Failed To Allege That The Wrongs She Suffered Were Committed By "Bad Men"

Ms. Garreaux has not alleged that she was wronged by "bad men" within the meaning of the Treaty. Indeed, the allegations in her complaint do not identify the people she believes wronged her, much less allege the facts that support her claim that they are bad men. Although the Treaty does not explain what it means when it refers to "bad men," the lone case to address this issue makes clear that, at the very least, the Treaty's bad men language requires the proof of facts apart from the fact that the accused perpetrated a wrong. In Hebah II, the court considered separately whether the alleged perpetrator in that case had wronged the plaintiff and whether the perpetrator was a bad man. Hebah II, 197 Ct. Cl. at 734. Concluding that a wrong had not been committed, the Court declined to consider whether the officer involved as a bad man. Id. The dissent gave full consideration to this issue, however, and undertook a thorough examination of the perpetrator's character and reputation in so doing. Id. at 735-7. Ms. Garreaux, on the other hand, has not even stated the names of the persons she believes perpetrated wrongs against her. She has not made any allegations with respect to their character or reputations. Indeed she has not alleged any facts that suggest that they are "bad men" within the meaning of the Treaty. Her complaint therefore must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant respectfully request that the Court dismiss Ms. Garreaux's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant attorney General

JEANNE E. DAVIDSON
Acting Director

/s Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

/s Robert E. Chandler
ROBERT E. CHANDLER
Trial attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel.: (202) 307-0282

Attorneys for Defendant

February 5, 2007

CERTIFICATE OF FILING

I hereby certify that on this 5th day of February 2007, a copy of the foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Robert E. Chandler